FILED
2026 Nov-06 AM 08:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:23-cr-320-MHH-GMB-1** |
| | } | |
| **SAMDREKUS EUGENE BESTER,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION AND ORDER**

On June 5, 2026, a jury convicted Samdrekus Eugene Bester of conspiring to possess with intent to distribute methamphetamine weighing 500 grams or more in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). (Doc. 1; Doc. 236). Mr. Bester has asked the Court to set aside the jury's verdict and enter a judgment of acquittal or order a new trial. This opinion resolves Mr. Bester's motion.

I.

Under Rule 29 of the Federal Rules of Criminal Procedure, a defendant may move for a judgment of acquittal after a jury returns a guilty verdict. FED. R. CRIM. P. 29(c). Under Rule 29, a district court must consider whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Williams*, 390 F.3d 1319, 1323–24 (11th Cir. 2004). On a motion for judgment of acquittal, "the court assumes the truth of the evidence offered by the

prosecution" and cannot weigh the evidence or consider the credibility of witnesses. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Williams*, 390 F.3d at 1323–24.

Under Rule 33 of the Federal Rules of Criminal Procedure, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). When considering a Rule 33 motion, a district court may weigh the evidence and consider the credibility of the witnesses when assessing whether a defendant is entitled to relief. *See United States v. Hernandez,* 433 F.3d 1328, 1335 (11th Cir. 2005). Still, "Rule 33 isn't an invitation for the [trial] court to 'reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" *United States v. Witt*, 43 F.4th 1188, 1194 (11th Cir. 2022) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir. 1985)).

II.

On August 30, 2023, a grand jury indicted Mr. Bester and his two co-defendants, Jerald Bowers and Abigail Gambles, for conspiring to possess with

intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(A). (Doc. 1, pp. 1–2).[1]

In November 2023, pursuant to a plea agreement, Ms. Gambles pleaded guilty to all counts against her. (Minute Entry 11/07/2023; *see* Docs. 39, 40). In January 2024, pursuant to a plea agreement, Mr. Bowers pleaded guilty to all counts against him. (Minute Entry 1/29/2023; *see* Docs. 44, 49). Ms. Gambles's plea agreement and Mr. Bowers's plea agreement include supplements in which the two defendants agreed to provide complete and truthful information to the government and to cooperate with the government if the government pursued charges against other individuals. (*See* Doc. 97; Doc. 253). Mr. Bowers hoped that he would receive a reduction in his sentence based on his cooperation, and, perhaps, a sentence below a mandatory minimum sentence for the charges against him; so did Ms. Gambles. (*See* Doc. 97, p. 3; Doc. 253).

In June 2026, Mr. Bester went to trial on the conspiracy to possess with intent to distribute methamphetamine charge against him.[2] Before trial, the government

---

[1] The grand jury also indicted Ms. Gambles for two counts of distributing methamphetamine in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A) and one count of possessing with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). (Doc. 1, pp. 2–4). The jury indicted Mr. Bowers on two counts of distributing methamphetamine in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A). (Doc. 1, pp. 2–3).

[2] Mr. Bester's trial was delayed due to several changes in his representation. On September 20, 2023, the Court appointed an attorney to represent Mr. Bester. (Doc. 15). Mr. Bester then retained a private attorney to represent him. (Minute Entry 9/25/2023; Doc. 32). In May 2024, Mr. Bester asked the Court to appoint a new attorney to present him, (Doc. 72), and Mr. Bester's retained

informed Mr. Bester by letter that Ms. Gambles and Mr. Bowers were testifying "for consideration at [their] pending sentencing[s]," (Doc. 253, pp. 4:19–24, 15:2–16:9), but the Government did not disclose Mr. Bowers's and Ms. Gambles's plea supplements, (Doc. 253, pp. 4:19–24). Mr. Bester received copies of the plea agreement supplements during trial. (*See* Doc. 253, pp. 4:2–24, 13:6–19; *see also* Docs. 238-2, 238-4). Mr. Bester's trial lasted five days. (*See* Docs. 250, 251, 252, 254, 255). Viewed in the light most favorable to the government, the evidence at trial established the facts that follow.

Mr. Bester has been incarcerated in Alabama since May 2016. (Doc. 254, p. 165:3–5). In 2017, Mr. Bester was convicted in state court of murder and sentenced to life in prison. (Doc. 254, p. 119:15–24). Mr. Bester challenged his conviction;

---

attorney filed a motion to withdraw, (Doc. 73). On June 6, 2024, the Court granted Mr. Bester's motion, appointed a new attorney to represent Mr. Bester, and allowed retained counsel to withdraw from the case. (Doc. 78). Mr. Bester's third attorney withdrew in early October 2024, (Doc. 111), and the Court appointed another attorney for Mr. Bester, (Doc. 113). Mr. Bester again requested new counsel, and the Court appointed his fifth attorney in late October 2024. (Doc. 123). In March 2025, Mr. Bester's fifth attorney asked to withdraw. (Doc. 147). The Court appointed Mr. Bester's sixth attorney. (Doc. 151). When Mr. Bester's sixth attorney asked to withdraw, the Court granted the motion, ordered the Clerk of Court to appoint another attorney to represent Mr. Bester, and advised Mr. Bester this would be the last attorney who the Court would appoint. (*See* Minute Entry 8/12/25). On August 14, 2025 the Court appointed Justin K. Forrester to represent Mr. Bester. (Doc. 160). Mr. Forrester twice moved to withdraw before trial. (Docs. 189, 199). During a January 12, 2026 hearing, the Court denied Mr. Forrester's motion to withdraw on the record. (*See* Minute Entry 1/12/26). The Court denied Mr. Forrester's motion to withdraw for the reasons discussed during the January 12, 2026 hearing. (Doc. 201). Mr. Bester has asked the Court to appoint a new attorney to represent him with respect to post-trial motions and sentencing. (Doc. 243). Because he represented Mr. Bester at trial, Mr. Forrester is best situated to litigate Mr. Bester's post-trial motions and advocate for Mr. Bester at sentencing. For this reason and the reasons discussed during the January 12, 2026 regarding Mr. Forrester's first motion to withdraw, the Court denies Mr. Bester's request for new counsel with respect to post-trial motions and sentencing.

his challenge remains pending. (Doc. 254, p. 120:12–16). In 2019, Mr. Bester met Mr. Bowers while they were incarcerated at the same facility. (Doc. 254, p. 168:8–22).

In the spring of 2022, Mr. Bester began communicating with Sonya Michelle Bonner through social media. (Doc. 252, p. 203:2–8). At first, Mr. Bester and Ms. Bonner spoke occasionally via Facebook messenger. (Doc. 252, pp. 252:10–24). Eventually, they began speaking daily, and their relationship became romantic in nature. (Doc. 252, pp. 204:22–205:3). That fall, Mr. Bester met Ms. Gambles "through some guys in prison." (*See* Doc. 252, pp. 49:2–9, 50:11–14; Doc. 254, p. 170:7–9).[3] Ms. Gambles "was looking for affection," (Doc. 254, p. 170:16–17), and Mr. Bester flirted with her, (Doc. 252, p. 49:11–50:3). Mr. Bester and Ms. Gambles began communicating via Facebook messaging, audio calls, and video calls. (Doc. 252, p. 50:11–24).[4] In October of 2022, Mr. Bester asked Ms. Gambles to download WhatsApp, and the pair spoke daily using that telephone app. (Doc. 252, pp. 52:12–23, 53:8–13). Later that month, Mr. Bester asked Ms. Gambles to start transporting drugs for him. (Doc. 252, p. 54:14–19). Initially, Ms. Gambles refused, but when

[3] Mr. Bester testified at trial and offered his account of his relationship with Ms. Gambles. (Doc. 254, pp. 133:4–135:1, 138:23–139:24, 142:25–145:20, 148:23–8, 150:5–152:13, 170:6–171:16).

[4] At trial, Ms. Gambles identified Mr. Bester via a photograph and confirmed that he was the person she Facetimed with in late 2022. (Doc. 252, p. 51:12–25; *see* Doc. 237-5)

Mr. Bester told her that he could help her financially and pay her rent, she agreed to work for him because she was struggling financially. (Doc. 252, pp. 54:20–55:8).

After Ms. Gambles agreed to participate in Mr. Bester's narcotics operation, Mr. Bester arranged for a woman to leave a box at Ms. Gamble's home. (*See* Doc. 252, p. 56:7–9). Mr. Bester told Ms. Gambles that the box contained "ice," a street name for methamphetamine. (Doc. 252, pp. 57:10–58:2). The methamphetamine was packaged in bundles; Mr. Bester referred to these bundles as "keys." (Doc. 252, p. 59:1–20). Mr. Bester directed Ms. Gambles to meet with another individual, "Slim," to sell a key of methamphetamine. (Doc. 252, pp. 58:6–9, 59:10–11). Mr. Bester, Slim, and Ms. Gambles spoke on a three-way call to determine where they would meet. (Doc. 252, p. 58:22–24). After Ms. Gambles exchanged the drugs with Slim for cash, she brought the money home and counted it. (*See* Doc. 252, p. 63:16–18). Mr. Bester would not tell Ms. Gambles what he expected the count to be, and the two often argued about whether Ms. Gambles's count was accurate. (Doc. 252, p. 64:3–7). Eventually, Mr. Bester directed Ms. Bonner to buy an electric money counter and bring it to Ms. Gambles. (Doc. 252, p. 210:16–211:3). Twice, Mr. Bester paid Ms. Gambles via Cash App. (*See* Doc. 252, pp. 60:18–63:3; Doc. 254, pp. 46:18–48:5; Doc. 237-106).[5]

---

[5] At trial, Ms. Gambles testified that Mr. Bester paid her via Cash App using an account named "GMK60." (Doc. 252, pp. 62:1–63:6). Alias history for the account demonstrates that the account was registered with the email address "SamBester2023@gmail.com." (Doc. 254, pp. 52:21–53:3).

When Ms. Gambles finished counting the money, Mr. Bester would send Ms. Bonner to retrieve the money. (See Doc. 252, pp. 63:19–21, 207:8–9).[6] As with Ms. Gambles, Mr. Bester would not tell Ms. Bonner how much money she was supposed to receive. (Doc. 252, p. 209:17–24). Ms. Bonner would count the money for Mr. Bester, and Mr. Bester would indicate whether the count matched the amount he expected her to receive. (Doc. 252, p. 209:21–24). Ms. Bonner then would use the cash to pay an attorney for Mr. Bester. (Doc. 252, pp. 208:24–209:1).[7] Mr. Bester coordinated other meetings between Ms. Gambles and buyers, and this pattern repeated. (*See* Doc. 252, p. 59:10–14).

Additionally, at Mr. Bester's direction, Ms. Gambles synthesized Flakka, and Ms. Bonner helped Mr. Bester smuggle Flakka into prison. (*See* Doc. 252, pp. 86:2–89:8; 211:15–214:25). Mr. Bester arranged for Ms. Gambles to pick up a Pepsi bottle containing a clear liquid and a Ziploc bag containing a brown powder from another person. (Doc. 252, p. 87:9–17). Then, Mr. Bester instructed Ms. Gambles to mix the powder with the liquid and soak paper in the mixture. (Doc. 252, pp. 86: 23–87:25). Mr. Bester explained to Ms. Gambles that the mixture was Flakka, a

[6] Texts between Ms. Gambles and Ms. Bonner in December 2022 and January 2023 were admitted into evidence at trial and corroborated Ms. Gambles's account of her meetings with Ms. Bonner at Mr. Bester's direction. (*See* Doc. 252, pp. 64:19–70:8; Docs. 237-99, 237-100, 237-101, 237-102, 237-104).

[7] At the time, attorney Randy Dempsey was representing Mr. Bester on appeal from his 2017 state court conviction. (*See* Doc. 254, pp. 118:23–120:16, 173:6–174:2).

synthetic drug. (*See* Doc. 252, pp. 88:1–10). Ms. Bonner picked up the Flakka-soaked paper from Ms. Gambles, marked the paper as legal mail, and sent it to Mr. Bester in prison. (Doc. 252, pp. 87:22–25, 212:1–20).

In late 2022, Mr. Bowers was released from prison. (Doc. 251, p. 202:15–19). Mr. Bester reached out to Mr. Bowers via Facebook, asked Mr. Bowers if he "want[ed] to make extra money," and offered to sell him methamphetamine. (Doc. 251, pp. 202:15–203:9).[8]

In early 2023, a DEA confidential informant reported that Mr. Bowers was selling large quantities of methamphetamine. (Doc. 251, p. 19:19–23). The DEA arranged for the confidential informant to buy methamphetamine from Mr. Bowers via a controlled purchase. (Doc. 251, p. 20:1–4). Before the purchase occurred, the DEA provided $6,000 in authorized funds for the confidential informant to pay Mr. Bowers for drugs Mr. Bowers previously had fronted. (Doc. 251, pp. 21:12–22:24).[9]

On January 12, 2023, the confidential informant contacted Mr. Bowers to purchase methamphetamine. (*See* Doc. 251, p. 229:10–15). Mr. Bowers contacted Mr. Bester to get methamphetamine to sell to the confidential informant. (Doc. 251,

---

[8] Like Ms. Gambles, Mr. Bowers identified Mr. Bester by his voice and image on video calls. (Doc. 251, p. 204:11–17).

[9] At trial, a DEA agent explained that "fronted" means "given on consignment, given, expecting to be returned later, just given and paid back later." (Doc. 251, p. 21:17–19). Typically, when drugs are fronted, a buyer must pay for the fronted drugs before the buyer can get another batch of drugs. (Doc. 251, p. 21:20–23).

p. 204:8–23). Later that day, Mr. Bester told Ms. Gambles that he wanted to help Mr. Bowers "get on his feet" after his prison sentence. (Doc. 252:7–19). Mr. Bester arranged for Ms. Gambles to meet Mr. Bowers at Exotic Wings. (*See* Doc. 251, p. 209:5–8; Doc. 252, p. 74:12–21).[10] Mr. Bester instructed Ms. Gambles to bring two keys of methamphetamine for Mr. Bowers. (Doc. 252, p. 75:7–19). Ms. Gambles placed the methamphetamine in a trash bag. (*See* Doc. 252, p. 76:12 – 14).

Later, DEA agents surveilled Mr. Bowers as the confidential informant picked him up at his home and drove him to Exotic Wings. (*See* Doc. 251, p. 26:21–27:22). Mr. Bowers arrived at Exotic Wings before Ms. Gambles and went inside to buy food. (*See* Doc. 251, pp. 27:23–28:1; Doc. 252, p. 76:1–4). Shortly before Ms. Gambles arrived, Mr. Bester called Mr. Bowers and told him that she was arriving at the restaurant. (Doc. 251, p. 211:7–16). Meanwhile, Ms. Gambles was on Facetime with Mr. Bester; after she parked, Mr. Bester told her that Mr. Bowers was "about to get out of the car and walk over." (Doc. 252, p. 76:7–9). Law enforcement officers observed Mr. Bowers approach Ms. Gambles's vehicle and retrieve the trash bag that contained the methamphetamine. (Doc. 252, p. 76:20–21; *see* Doc. 251, pp.

[10] Mr. Bowers testified that he and Mr. Bester chose the location during their phone call. (Doc. 251, p. 209:2–19). Ms. Gambles testified that she told Mr. Bester that she would meet Mr. Bowers at Exotic Wings because she did not want Mr. Bowers to go to her home. (See Doc. 252, p. 74:12–21).

28:7–11, 211:20–212:1). The confidential informant drove Mr. Bowers back to his home. (Doc. 251, p. 28:14–20).

After dropping Mr. Bowers off, the confidential informant met with DEA agents and gave them the drugs that Mr. Bowers had gotten from Ms. Gambles. (Doc. 251, p. 28:14–20). The DEA agents sent the drugs to the DEA lab in Miami for testing, (Doc. 251, pp. 29:3–30:7). Testing confirmed that the drugs were methamphetamine, the net weight of the mixture was 899.1 grams, and the amount of "pure" methamphetamine was 872.1 grams. (Doc. 251, pp. 158:24–163:25).

After observing Ms. Gambles's interaction with Mr. Bowers at Exotic Wings, DEA agents ran the tag on her vehicle, identified her, and started surveilling her residence. (Doc. 251, p. 30:11–25). DEA agents coordinated a second controlled purchase on January 18, 2023. (Doc. 251, pp. 33:17–34:3). The confidential source called Mr. Bowers and asked to buy more methamphetamine. (*See* Doc. 251, pp. 34:17–36:16). Mr. Bowers contacted Mr. Bester to buy more methamphetamine. (Doc. 251, p. 214:7–16). Mr. Bester told Ms. Gambles that she needed to meet Mr. Bowers and bring four keys. (Doc. 252, p. 79:13–21). Mr. Bester arranged for Mr. Bowers and Ms. Gambles to meet at a McDonald's restaurant. (Doc. 251, p. 215:4–9; Doc. 252, p. 79:8–16).

Again, DEA agents surveilled Mr. Bowers as he and the confidential informant traveled to the purchase location. (Doc. 251, pp. 36:18–37:5). At the

McDonald's, agents watched as Ms. Gambles gave Mr. Bowers the drugs, and Mr. Bowers gave Ms. Gambles cash. (Doc. 251, pp. 37:17–22, 216:7–23, 218:21–219:25; Doc. 252, p. 81:4–18). Ms. Gambles took the cash home and counted it while she was on the phone with Mr. Bester. (Doc. 252, p. 81:21–82:5).

Meanwhile, agents arranged for officers to stop the vehicle in which Mr. Bowers and the confidential informant were traveling for a traffic violation. (Doc. 251, pp. 38:9–18, 241:9–12). Officers searched the vehicle and located the methamphetamine. (Doc. 251, p. 219:13–16). Mr. Bowers initially told police that he had purchased the drugs from Mr. Bester. (Doc. 251, pp. 219:21–220:23).[11] DEA agents sent the drugs to the DEA lab for testing. (Doc. 251, p. 39:1–20). Test results showed that the drugs were methamphetamine, the net weight of the mixture was 3,587.5 grams, and the amount of "pure" methamphetamine was 3,515.7 grams. (Doc. 254, pp. 19:11–24:18).

On January 19, 2023, DEA agents arrested Ms. Gambles at her home and executed search warrants on her home and her car. (Doc. 252, pp. 82:6–83:1). In Ms. Gambles's home, police found a money counter, a scale, bundles of methamphetamine, and a box that contained bottles of liquids and a zip-loc bag with a brown powdery substance. (Doc. 252, pp. 86:3–87:16, 90:3–17).

[11] At first, Mr. Bowers told the agents that he had purchased the drugs from a woman and identified his purported source by a fake name. (*See* Doc. 251, pp. 219:21–220:23).

After her arrest, Ms. Gambles agreed to cooperate with police. (Doc. 252, p. 154:5–6). That afternoon, Ms. Gambles attempted to call Mr. Bester via Facetime while DEA agents recorded the call. (Doc. 252, pp. 154:12 – 156:3, 173:1–14). Mr. Bester answered the call with audio only. (See Doc. 252, p. 173:1–14). During the call, Mr. Bester "didn't say much" and told Ms. Gambles that he would call her back. (Doc. 252, p. 156:1–2). Later that evening, Mr. Bester called Ms. Gambles and instructed her to go to Tuscaloosa. (Doc. 252, pp. 156:3–18). Ms. Gambles reported the call to a DEA agent. (Doc. 252, p. 157:9–11). Later, Ms. Gambles took screenshots of her text conversations with Mr. Bester and sent them to a DEA agent. (Doc. 252, tpp. 98:19–99:18; *see* Doc. 252, pp. 105:23–153:1; Docs. 237-42–237-98).[12]

Based on this evidence, the jury found Mr. Bester guilty of conspiracy to possess with intent to distribute methamphetamine weighing 500 grams or more. (Doc. 236).[13]

---

[12] At trial, Ms. Gambles testified that, when she communicated with Mr. Bester via WhatsApp, his photo and name were displayed on her messages. (Doc. 252, p. 101:4 – 12). Shortly after Ms. Gambles's arrest, the name and username associated with the phone number changed. (Doc. 252, p. 101:13–20). Ms. Gambles's screenshots included the phone number associated with the WhatsApp account that she had used to communicate with Mr. Bester, but not his name or photograph. (*See, e.g.*, Doc. 237-42).

[13] The Court gave the jury the following instructions concerning the charge against Mr. Bester:

> Count One charges that beginning in and about January 2023, [sic] and continuing to on or about January 19, 2023, within the Northern District of Alabama, the defendant Samdrekus Eugene Bester and his codefendants Jerald Jermaine Bowers,

a/k/a Hack, and Abigail Grisom Gambles, did knowingly and intentionally conspire and agree with each other and others to knowingly and intentionally possess with intent to distribute and to distribute a controlled substance, that is, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), and (b)(1)(A).

It is a federal crime for anyone to conspire to knowingly possess with intent to distribute or distribute a controlled substance. Title 21, United States Code, Section 841(a)(1) makes it a crime for anyone to knowingly possess a controlled substance with intent to distribute it or to distribute a controlled substance.

A "conspiracy" is an agreement by two or more people to commit an unlawful act. In other words, it is a kind of partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member. The government does not have to prove that all of the people named in the indictment were members of the plan or that those who were members made any kind of formal agreement. The heart of a conspiracy is the making of the unlawful plan itself. So the government does not have to prove the conspirators succeeded in carrying out the plan.

Mr. Bester can be found guilty of Count One only if all the following facts are proved beyond a reasonable doubt: First, two or more people in some way agreed to accomplish a shared and unlawful plan to possess with intent to distribute or to distribute a controlled substance; Second, Mr. Bester knew the unlawful purpose of the plan and willfully joined in it; and Third, the object of the unlawful plan was to possess with the intent to distribute a controlled substance.

A person may be a conspirator without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators. If Mr. Bester played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion, that is sufficient for you to find Mr. Bester guilty. But simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests does not establish proof of a conspiracy. Also, a person who does not know about a conspiracy but happens to act in a way that advances some purpose of one does not automatically become a conspirator.
. . .

Mr. Bester is charged with conspiring to possess with intent to distribute or to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, but you may find Mr. Bester guilty of the crime even if the weight of the controlled substance for which he should be held responsible is less than 500 grams. So if you find Mr. Bester guilty, you must also find whether the government has proved beyond a reasonable doubt the weight of the specific

III.

Mr. Bester argues that no reasonable trier of fact could conclude beyond a reasonable doubt that he is guilty of conspiracy to possess with intent to distribute methamphetamine. (Doc. 246, p. 2); *see* FED R. CRIM P. 26. Alternatively, Mr. Bester argues that even if the evidence at trial was sufficient to support a guilty verdict, "allowing the guilty verdict to stand in this matter would be an injustice." (Doc. 246, p. 2); *see* FED R. CRIM. P. 33(a).

Mr. Bester argues that the government did not establish that he participated in a conspiracy with Mr. Bowers, Ms. Gambles, and Ms. Bonner to distribute methamphetamine. (Doc. 246, pp. 2–3).[14] To establish that these individuals engaged in a conspiracy to possess with intent to distribute methamphetamine, the government had to prove beyond a reasonable doubt that two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess with intent to

> controlled substances attributable to Mr. Bester and specif[]y the weight on the verdict form.

(Doc. 254, pp. 205:17–208:24).

[14] Whether Mr. Bowers, Ms. Gamble, and Ms. Bonner were in a conspiracy with Mr. Bester is relevant because a defendant's co-conspirator's statements made in furtherance of the conspiracy are admissible against the defendant at trial. *See* FED. R. EVID. 801(d)(2)(E). "For a co-conspirator statement to be admissible under [Rule 801(d)(2)(E)], the government must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy." *United States v. Graham*, 123 F.4th 1197, 1249 (11th Cir. 2024) (quoting *United States v. Hough*, 803 F.3d 1181, 1193 (11th Cir. 2015)). Statements by unindicted co-conspirators are admissible under Rule 801. *See Graham*, 123 F.4th at 1249 (holding that a district court did not err when it admitted statements from an unindicted co-conspirator).

distribute or to distribute a controlled substance; each person knew the unlawful purpose of the plan and willfully joined in it; and the object of the unlawful plan was to distribute or to possess with the intent to distribute methamphetamine. *See* 11TH CIR. PATTERN JURY INST. O13.1, O98.1 (2026); Doc. 254, pp. 206:21–207:6). "A person may be a conspirator without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators." 11TH CIR. PATTERN JURY INST. O13.1; (Doc. 254, p. 207:7–9).

Here, Mr. Bowers, Ms. Gambles, and Ms. Bonner may not have known all of the details of Mr. Bester's plan to possess and distribute methamphetamine, but the trial evidence establishes beyond a reasonable doubt that each knowingly participated in Mr. Bester's criminal plan. Mr. Bowers knowingly participated in a plan to possess with intent to distribute methamphetamine when he, at Mr. Bester's direction, bought distribution quantities of methamphetamine from Ms. Gambles; Ms. Gambles knowingly participated in a plan to possess with intent to distribute methamphetamine when she, at Mr. Bester's direction, received methamphetamine and sold keys of the drug to Mr. Bowers; and Ms. Bonner knowingly participated in a plan to possess with intent to distribute methamphetamine when she, at Mr. Bester's direction, retrieved proceeds from Ms. Gambles's methamphetamine sales and used them to pay Mr. Bester's attorney. Thus, the government met its burden to demonstrate that Mr. Bowers, Ms. Gambles, and Ms. Bonner knowingly entered a

conspiracy with Mr. Bester to possess with the intent to distribute methamphetamine.

Mr. Bester argues that "the cooperating witnesses failed to provide evidence that the individual that they were talking to was in fact" him. (Doc. 246, p. 2). At trial, Mr. Bowers testified that he recognized Mr. Bester's voice and image when the two discussed Mr. Bowers's purchase of methamphetamine via a video call. (*See* Doc. 251, p. 204:3–17). Mr. Bowers had been in prison with Mr. Bester, (Doc. 254, pp. 125:17–126:2, 168:8–19), so jurors reasonably could conclude that Mr. Bowers could recognize Mr. Bester's voice. Ms. Gambles testified that Mr. Bester had participated in calls and video calls using WhatsApp messages. (*See* Doc. 252, pp. 100:24–101:2, 115:20–116:10). Likewise, Ms. Bonner testified that she recognized Mr. Bester from video calls. (Doc. 252, pp. 205:15–22).[15] Mr. Bowers, Ms. Gambles, and Ms. Bonner each identified Mr. Bester by his photograph at trial. (Doc. 251, p. 202:1–6; Doc. 252, pp. 51:12–25, 202:15–23; *see* Doc. 237-104). Thus, reasonable jurors could find that Mr. Bowers's, Ms. Gambles's, and Ms. Bonner's communications about distribution of methamphetamine keys and the proceeds of those sales were with Mr. Bester while he was in prison.[16]

---

[15] Additionally, Ms. Bonner visited Mr. Bester in prison. (Doc. 252, p. 206:2–207:1).

[16] On cross examination, Mr. Bester acknowledged that most Alabama prisoners have cell phones in prison; Mr. Bester discussed the pricing of contraband phones in prison. (Doc. 254, pp. 165:25–167:14).

Mr. Bester argues that the Court improperly admitted screenshots of text messages without a proper foundation. (Doc. 246, p. 3). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). This is not an onerous burden; "'[t]he proponent need only present enough evidence to make out a prima facie case that the proffered evidence is what it purports to be.'" *United States v. Carr*, 607 Fed. Appx. 869, 876 (11th Cir. 2015) (quoting *United States v. Lanzon,* 639 F.3d 1293, 1301 (11th Cir. 2011)). A district court has "discretion to determine authenticity," and an appellate court will not overrule the district court's exercise of discretion "'absent a showing that there is no competent evidence in the record to support'" the district court's determination. *Carr*, 607 Fed. Appx. at 876 (quoting *Lanzon,* 639 F.3d at 1301).

At trial, Ms. Gambles reviewed each screenshot of her text messages and confirmed that they "fairly and accurately" reflected her messages with Mr. Bester between December 2022 and January 2023. (Doc. 252, p. 104:6–15). Ms. Gambles's testimony provides sufficient evidence to demonstrate that the screenshots showed what the government claimed they showed, that is, text messages between Mr. Bester and Ms. Gamble. Moreover, although Mr. Bester argues that the Court improperly admitted text messages without sufficient evidence that demonstrated the texts were related to a drug conspiracy, Ms. Gambles's

testimony at trial connected each text message to the criminal conspiracy. (*See* Doc. 252, pp. 105:12–152:17).

Additionally, Mr. Bester argues that the Court improperly allowed prejudicial evidence of a conspiracy between two co-conspirators that did not involve him and prejudicial evidence of unrelated drug activity. (Doc. 246, p. 3). Mr. Bester does not identify what evidence he contends relates to an unrelated conspiracy and drug activity; the Court presumes that Mr. Bester is referencing evidence at trial regarding the synthesis and distribution of Flakka-soaked paper. Evidence is generally admissible if it has a tendency to make a material fact more or less probable. *See* FED. R. EVID. 401, 402. A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Exclusion for prejudice is "'an extraordinary remedy which should be used sparingly.'" *Jackson v. Catanzariti*, 159 F.4th 874, 884 (11th Cir. 2025) (quoting *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991)).

Here, evidence concerning Mr. Bester's, Ms. Gambles's, and Ms. Bonner's activities related to the synthesis and distribution of Flakka are relevant because they tend to show that Mr. Bester knew Ms. Gambles and Ms. Bonner and that Mr. Bester directed Ms. Gambles's and Ms. Bonner's drug distribution activity while he was

incarcerated. The Flakka evidence tends to prove that though he was incarcerated, Mr. Bester had the means and the intent to distribute illegal substances within and outside of the state prison where he was housed. Mr. Bester has not demonstrated that the prejudicial effect of this evidence outweighs its probative value. Additionally, the Court's limiting instruction regarding evidence of crimes not charged in the indictment, (Doc. 254, pp. 203:15–204:1), mitigated any prejudice the evidence may have caused. (Doc. 151, p. 180:21–25; *see* Doc. 254, pp. 203:15–204:1); *United States v. Macrina*, 109 F.4th 1341, 1350 (11th Cir. 2024) ("Even if the admission of the [evidence] could have unfairly prejudiced [the defendant], the limiting instruction cured that unfairness. We have held that a limiting instruction in the context of Rule 403 evidence may mitigate the risk of unfair harm.").

Finally, Mr. Bester argues that the government improperly withheld evidence related to the impeachment of two witnesses and failed to correct its error. (Doc. 246, p. 3). As discussed above, the government did not give Mr. Bester's attorney a copy of Mr. Bowers's and Ms. Gambles's plea agreement supplements until after Mr. Bester's trial started. As the Court explained at trial, when the prosecution withholds evidence favorable to a criminal defendant, including evidence related to impeachment of government witnesses, the defendant is entitled to a new trial if he shows that the government's non-disclosure prejudiced his defense. *See United States v. Brester*, 786 F.3d 1335, 1339 (11th Cir. 2015); *United States v. Carson*,

No. 12-10682 (11th Cir. May 13, 2013) (unpublished); (Doc. 254, pp. 115:3–8, 161:4–8) (discussing *Brester* and *Carson*). To establish prejudice, a defendant must show "a reasonable probability" that but-for the government's failure to disclose evidence, the outcome of the case would be different. *Brester*, 786 F.3d at 1339. Here, Mr. Forrester received copies of Mr. Bowers's and Ms. Gambles's plea supplements and had the opportunity to use the documents to cross-examine Mr. Bowers and Ms. Gambles. (Doc. 253, pp. 20:7–26:15, 33:14–34:25; *see* Doc. 254, pp. 115:17–116:11). The Court gave Mr. Forrester time to review the documents during trial. (*See* Doc. 253, pp. 6:16–19, 12:6–15, 13:6–19). In addition, before trial, the government sent Mr. Forrester a letter that notified Mr. Bester that Ms. Gambles and Mr. Bowers would testify at Mr. Bester's trial "for consideration at [their] pending sentencing[s]." (Doc. 253, pp. 4:19–24, 15:2–16:9). Thus, under the circumstances of this case, Mr. Bester has not demonstrated that he was prejudiced by the government's failure to disclose impeachment evidence prior to trial in violation of the Court's pretrial orders. *See Brester*, 786 F.3d at 1339; (Docs. 238-2, 238-4). The Court does not condone the government's failure to produce the plea agreement supplements before trial, but the conduct does not provide a reason to set aside the jury's verdict.

IV.

Based on the evidence presented at trial, reasonable jurors could find that Mr. Bester participated in a conspiracy to possess with intent to distribute methamphetamine. *See* FED. R. CRIM. P. 26. Mr. Bester has not demonstrated that allowing the jury's verdict to stand would be unjust under the circumstances of this case. Therefore, the Court denies Mr. Bester's motion and declines to set aside the jury's verdict.[17]

The Clerk of Court shall please TERM Docs. 243, 246, and 258.

**DONE and ORDERED this November 5, 2026.**

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

[17] To the extent that Mr. Bester argues he is entitled to a new trial because he received ineffective assistance of counsel, (*see* Doc. 258), "[t]he preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion." *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).